Submitted August 29, 2018, reversed and remanded for entry of judgment allowing defendant's demurrer November 27, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES EDWARD GARRETT,
*Defendant-Appellant.*

Lane County Circuit Court
15CR16836; A161935

455 P3d 979

Defendant appeals a judgment of conviction for one count of first-degree sodomy, one count of first-degree sexual abuse, one count of first-degree encouraging child sexual abuse (ECSA), and 10 counts of second-degree ECSA. Defendant argues that the trial court erred when it disallowed his demurrer, because the charges were improperly joined in the indictment. *Held*: The Court of Appeals looked to federal law for guidance in the court's interpretation of the "same or similar character" language in the joinder statute, ORS 132.560(1)(b)(A), and concluded that the trial court erred when it disallowed defendant's demurrer and the disallowance of the demurrer was not harmless.

Reversed and remanded for entry of judgment allowing defendant's demurrer.

R. Curtis Conover, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kristin A. Carveth, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Sercombe, Senior Judge.

TOOKEY, J.

Reversed and remanded for entry of judgment allowing defendant's demurrer.

**TOOKEY, J.**

Defendant appeals a judgment of conviction for one count of first-degree sodomy against a victim under 12 years of age, ORS 163.405(1)(b), one count of first-degree sexual abuse against the same victim, a child under 14 years of age, ORS 163.427(1)(a)(A), one count of first-degree encouraging child sexual abuse (ECSA), ORS 163.684, and 10 counts of second-degree ECSA, ORS 163.686. Defendant raises 16 assignments of error. We write only to address defendant's second assignment of error, in which he argues that the trial court erred when it disallowed his demurrer to the indictment.[1] We conclude that the trial court erred when it disallowed defendant's demurrer and that the disallowance of the demurrer was not harmless. Accordingly, we reverse and remand for entry of judgment allowing defendant's demurrer.

## I.  BACKGROUND

The relevant facts are undisputed. J is defendant's cousin. Defendant was watching J's son and stepdaughter, K, while J went on a camping trip with his wife. Shortly after leaving to go on their camping trip, J realized that he had forgotten the can opener and decided to return home to pick it up. J ran into the house while his wife waited in the car. When J got inside, he saw that his son was watching television by himself in the living room and that J's bedroom door was closed. When J tried to turn the bedroom door handle, it was locked, and J heard K tell her little brother, whom she thought was at the door, to go away. J grabbed a flathead screwdriver and opened the door within 45 seconds. When J opened the door, he saw "[defendant's] bare buttocks, and he had his jacket and shirt on, but he was naked from the waist down pulling his pants up at the time saying, 'I messed up. I messed up.'" J also saw that K was "naked from the waist down with her panties and pants on the floor *** and a confused look on her face." J said, "Oh, hell, no," went outside, grabbed his phone, and called the police while defendant sat on the front porch.

---

[1] Our resolution of defendant's second assignment of error obviates the need to address his remaining assignments of error.

Officer Molaski arrived shortly thereafter and interviewed defendant about J's report of sexual abuse. Defendant admitted that he "was caught in a compromising position" when "[h]e and his 9-year-old cousin were in the bedroom naked together," and told Molaski, "I know what I did was wrong. I'm the adult." Defendant was read his *Miranda* rights and agreed to go down to the police station to discuss what had happened.

Detective Grice arrived at J's home and interviewed K. K told Grice that defendant had put a video on the computer in the bedroom that showed adults in different sexual "positions," which K described as "inappropriate behavior." When Grice asked K how she ended up in the bedroom, K said that "defendant had told her he wanted to show her a movie about positions, and that he pulled her pants and panties off after leading her into the bedroom and *** lock[ing] the door behind her." K also told Grice that defendant had pulled his own pants down. When Grice asked K whether defendant had touched her at all, K quickly said, "No," but Grice observed K's body language change, so Grice stopped the interview and spoke with K's parents about taking K to the hospital for an examination. Grice left to set up a sexual assault examination at the hospital, and then he went to the police station to interview defendant.

When Grice arrived at the police station, Grice obtained DNA samples from defendant and interviewed defendant about what had happened earlier that day. According to defendant, that morning, K had gone into her parent's bedroom for about five minutes and then K came back out and told defendant that she wanted to show him something in the bedroom. When defendant entered the room, he said that K had turned on a "sex position" video on YouTube. Defendant stated that K then took off her own clothes, got into a sexual position, and told defendant that "she wanted to see what [his] thing looked like when it was close to that area." Defendant unzipped his pants and exposed his penis. After initially denying that he had any sexual contact with K because J came back home, defendant eventually admitted to Grice that his penis might have touched K while he was moving her into a position, that his penis might have "brushed against" her vagina or anus, and

that he might have pressed his penis up against her rectum for "a little less than half a second." Additionally, after Grice lied to defendant about K stating that she had felt defendant's penis push against her anus, defendant admitted that he had, in fact, pressed his penis against K's anus.

Defendant also admitted to Grice that he had had other interactions with K that were potentially sexual in nature. Defendant told Grice that K came into the bathroom while he was urinating and asked defendant questions about his penis. Defendant stated that, on another occasion, he had masturbated in front of K because she was curious about the size of his penis. Defendant also stated that he had accidentally touched K's genital area while they were playing and, when he apologized, K told defendant to "keep doing that." Ultimately, defendant admitted that he was sexually attracted to K, and that he was "expecting to do a couple months in jail, bare minimum, if not longer," because of "this whole situation."

Grice also asked defendant about the contents of defendant's computer. Defendant stated that he had never intentionally looked for child pornography on his computer, but that "a couple of child things do sneak in" when he "look[s] up things related to incest."

Based on the information that Grice had gathered during his investigation, Grice obtained, and then executed, a search warrant at defendant's home. Grice seized a computer from defendant's bedroom along with two thumb drives that were connected to the USB ports on the computer. Upon examination of that computer, it was discovered that several internet searches had been done, including searches for "[p]reteen erotic, preteen ass, slut niece, *** preteen ass erotic," and "fifth grade butt." Additionally, there were multiple images and videos of child pornography that had been downloaded onto one of the thumb drives.

Meanwhile, K was taken to the hospital and was examined by Partridge, a nurse trained to perform examinations in child sexual abuse cases. When Partridge asked K why she had come to the hospital, K told Partridge that it was because of "the bad thing that happened *** in mom's room" with defendant. K told Partridge that defendant had

taken off her clothes and his clothes and played a "weird" video, and that defendant had "tried to touch her butt with his hands and didn't get to because Daddy came to the door." Partridge took swabs of K's mouth, hands, genital area, and perianal area. K's physical exam revealed that all of "the tissue was normal" and that "there was no trauma."

K was also interviewed at the Kids First Center about a week later by a child forensic interviewer, Satterwhite. K told Satterwhite that defendant had put on the video about "inappropriate positions" in her parents' bedroom and that, when K went to see what the noise was, defendant pulled K into the bedroom and put K on the bed. After defendant put K on the bed, defendant took his pants and underwear off and took K's pants and underwear off. K said that defendant held her down and tried to touch her "bottom" with his hand but, "before he could, my dad got in, and I was so happy to see him." K stated that she never felt defendant touch her bottom and was "99 percent sure he didn't touch [her]."

Defendant was charged in a 17-count indictment with one count each of first-degree sodomy and first-degree sexual abuse against K, and 15 counts of first-degree ECSA.

Defendant filed a demurrer to the indictment. Defendant argued that the trial court should allow his demurrer because the state had failed to allege a basis for joining the sodomy and sexual abuse charges with the ECSA charges. Defendant contended that he would be prejudiced by the disallowance of the demurrer "because the jury *** will be hearing evidence regarding one set of crimes and a separate set of crimes, and *** they will not be able to consider the facts regarding one set when they're [considering] the other set." In other words, defendant contended that the joinder of the sodomy and sexual abuse charges with the ECSA charges would lead to the "improper presentation to the jury of acts which, if they were tried separately, would not be admissible in separate trials." Furthermore, defendant asserted that the joinder of the sodomy and sexual abuse charges with the ECSA charges would further prejudice his defense because "defendant would testify regarding Counts 1 and 2, [the sodomy and sexual abuse charges,] but would not testify on Counts 3 through 17," the ECSA charges,

and the jury will "wonder \*\*\* is he just admitting guilt 3 through 17 if he doesn't testify after he testifies to 1 and 2."

In response, the state argued that the crimes were properly joined as crimes that are the same or similar in character, because "all the charges in the indictment relate to child abuse, specifically the sexual abuse of a child." The state contended that the evidence from the ECSA charges would also be admissible as other acts evidence under OEC 404, and that any prejudice that arose as a result of that evidence, as well as defendant's choice to testify only regarding some of the charges, could be mitigated by a jury instruction.

After taking the matter under advisement, the trial court issued a written order disallowing defendant's demurrer. Accordingly, the trial court empaneled the jury, and the case proceeded to trial.

At trial, defendant did not deny that he was naked in the bedroom with K, that he had a sexual interest in K, and that he touched K with a sexual purpose. Defendant's theory of defense was that the state could not prove the sodomy charge because it did not provide sufficient evidence to show that defendant had actually engaged in "deviate sexual intercourse" with K.[2] Specifically, defendant pointed to the fact that K repeatedly said that defendant never caused K to engage in deviate sexual intercourse because J had come back home and stopped defendant from completing the crime. Defendant argued that he had admitted to touching K's anus with his penis only after Grice had subjected defendant to extensive questioning, and because Grice had lied to defendant about K stating that she had felt something press against her anus. Accordingly, defendant argued that

_____

[2] The indictment alleges that defendant committed the crime of first-degree sodomy in 2015. ORS 163.405(1)(b) (2015) provided that "[a] person who engages in deviate sexual intercourse with another person or causes another to engage in deviate sexual intercourse commits the crime of sodomy in the first degree if" the "victim is under 12 years of age." ORS 163.305(1) (2015) defined "deviate sexual intercourse" as "sexual conduct between persons consisting of contact between the sex organs of one person and the mouth or anus of another." We note that ORS 163.405 and ORS 163.305 have since been amended, and the term "deviate sexual intercourse" has been replaced by "oral or anal sexual intercourse." Or Laws 2017, ch 318, § 2; Or Laws 2017, ch 318, § 5. The effective date of those provisions was January 1, 2018. All of the references to ORS 163.405 and ORS 163.305 throughout this opinion are to the 2015 version of those statutes.

the jury should convict him of attempted sodomy and first-degree sexual abuse.

With regard to the ECSA charges, defendant did not dispute the existence of the images on his thumb drive. Defendant contended that the state could not prove that defendant had knowingly "duplicated" the images, and, thus, the jury should return guilty verdicts for the lesser included offense of second-degree ECSA based on his "possession" of the images.

J, Molaski, Grice, Partridge, and Satterwhite testified about the historical facts outlined above, including what they had observed on the day in question, and what was discovered during the subsequent investigation. In addition, K testified that, after defendant had pulled her into the bedroom, defendant took off his own clothes and K's pants, but not her underwear, and then J walked in.

There was conflicting testimony about the results of the DNA tests on the swabs taken from K's perianal area and the conclusions to be drawn from the test results. According to the state's expert, the swabs contained a small number of spermatozoa cells that revealed a partial DNA profile that was consistent with defendant's DNA profile, but the frequency of that DNA profile in "the Caucasian population" was "1 out of 340." Additionally, the state's expert found "non-sperm" DNA and concluded that that DNA came from defendant or someone in the paternal male line of defendant's family. Defendant's expert was unable to locate any DNA from spermatozoa, but stated that, in any event, "it's only as discriminating as 1 in 340, not anything like 1 in 340 trillion *** [s]o *** there isn't enough information here *** to identify any one particular person." Defendant's expert also concluded that the nonsperm DNA could not have belonged to defendant or anyone else in the paternal male line of defendant's family.

Defendant did not testify, but he presented expert testimony about confessions and circumstances that can affect a person's memory to explain his admission to Grice about sodomizing K. The jury found defendant guilty of one count of first-degree sodomy, one count of first-degree sexual

abuse, two counts of first-degree ECSA, and 13 counts of second-degree ECSA.[3] Defendant appeals from the judgment of conviction and assigns error to the trial court's disallowance of his demurrer.

On appeal, defendant contends that the offenses, which are merely described in the indictment using the words of the relevant statutes, are not, on their face, similar in character, because sodomizing and sexually abusing a named victim is different in character from duplicating images of sexually explicit conduct involving someone else's abuse of a different child. The state argues that "[t]he charged offenses are 'of the same or similar character' for purposes of the permissive joinder rule set forth in ORS 132.560(1)(b)(A), because they all disclose on their face that the state was alleging that defendant committed sexual offenses against children." In effect, the state advocates for a broad categorical approach to joinder under ORS 132.560(1)(b)(A) that pays almost exclusive attention to the class or category of the offenses. Thus, the issue we are asked to determine is whether the indictment, on its face, was legally sufficient to comply with the provisions of ORS 132.560(1)(b)(A). More specifically, the first question we confront in this case is whether the sodomy and sexual abuse offenses are of the same or similar character as the ECSA offenses because, as charged in this case, they are all sexual offenses against children.

## II.   ANALYSIS

We review the disallowance of a demurrer for legal error. *See State v. Taylor*, 364 Or 364, 375, 434 P3d 331 (2019) (whether the allegations in an indictment are sufficient to satisfy the statutory test for joinder is a question of law).

ORS 135.630(2) provides, in part, that a defendant may demur to an indictment when it appears on the face

---

[3] The trial court merged the two guilty verdicts for first-degree ECSA into a single conviction for first-degree ECSA. Additionally, the trial court merged three of the guilty verdicts for second-degree ECSA with three of the other guilty verdicts for second-degree ECSA, which resulted in defendant being convicted of a total of 10 counts of second-degree ECSA.

thereof "that it does not substantially conform to the requirements of ORS *** 132.560." ORS 132.560 provides, in pertinent part:

"(1) A charging instrument must charge but one offense, and in one form only, except that:

"* * * * *

"(b) Two or more offenses may be charged in the same charging instrument in a separate count for each offense if the offenses charged are alleged to have been committed by the same person or persons and are:

"(A) Of the same or similar character[.]"

Under ORS 135.630 and ORS 132.560, the state is "required to allege *** the basis for the joinder *** in the language of the joinder statute or by alleging facts sufficient to establish compliance with the joinder statute." *State v. Poston*, 277 Or App 137, 144-45, 370 P3d 904 (2016), *adh'd to on recons*, 285 Or App 750, 399 P3d 488, *rev den*, 361 Or 886 (2017)); *see also State v. Warren*, 364 Or 105, 114, 430 P3d 1036 (2018) (a "demurrer must be resolved on the face of the pleading" because "the legislature intended that a trial court would be able to determine, from the face of an indictment, whether the indictment complies with the joinder statute"). Here, the state did not expressly allege that the crimes were of the "same or similar character," and, thus, we must determine whether the factual allegations in the indictment are "sufficient to establish compliance with the joinder statute." *Poston*, 277 Or App at 145.

A.  *Assessing the Propriety of Joinder of Offenses on the Basis of the Same or Similar Character*

As we observed in *Poston*, the "legislature amended ORS 132.560 in 1989 to allow more liberal joinder of charges in criminal cases" and the "bill's legislative history shows that it was adopted with the understanding that it was revising ORS 132.560 to mimic Federal Rule of Criminal Procedure 8(a)." 277 Or App at 143-44 (citing House Bill (HB) 2251 (1989); Or Laws 1989, ch 842, § 1). That 1989 amendment added the "same or similar character" basis for joining two or more offenses in the same indictment from Federal Rule of Criminal Procedure 8(a), and "the legislators who

approved the amendment intended the Oregon statute to be construed consistently with the federal rule." *Id*. at 144; *see also Warren*, 364 Or at 125-26 (observing that the 1989 amendment to ORS 132.560 was based on Federal Rule of Criminal Procedure (FRCrP) 8 and apparently "imported text from * * * FRCrP 8(a))."[4] Accordingly, we turn to federal cases construing the "same or similar character" language as a basis for joining multiple charges under FRCrP 8(a) for guidance. *See State v. Walker*, 356 Or 4, 23-24, 333 P3d 316 (2014) (observing that when an Oregon statute is modeled on a federal statute, federal case law predating the enactment of the Oregon statute "can provide useful context for interpreting our statute," but "[c]ases that came later * * * may [only] be consulted for their persuasive value"); *State v. Meyer*, 109 Or App 598, 602, 820 P2d 861 (1991), *rev den*, 312 Or 677 (1992) (noting that, because the 1989 amendment to the joinder statute "was adapted from [FRCrP 8(a),] * * * the federal cases interpreting the 'same or similar character' language [are] persuasive").

The federal courts of appeal have diverged somewhat in their respective approaches to the joinder of charges on the basis of "same or similar character" under FRCrP 8(a). The Seventh Circuit has adopted a narrower categorical approach, like the one proposed by the state in this case, which focuses almost exclusively on the likeness of the "class" or category of the offenses and does not necessarily depend on temporal proximity or evidentiary similarity. *United States v. Coleman*, 22 F3d 126, 133-34 (7th Cir 1994). Thus, when "[t]he elements to be proved in each case were the same," the Seventh Circuit has held that that "similarity supports the district court's decision of joinder" on the basis of same or similar character. *United States v. Archer*, 843 F2d 1019, 1021 (7th Cir), *cert den*, 488 US 837 (1988); *see Coleman*, 22 F3d at 134 (concluding that "joinder under

---

[4] FRCrP 8(a) (1989) provided:

"Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, *are of the same or similar character* or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

(Emphasis added.)

Rule 8(a) was appropriate because Coleman was charged with four counts of possession of a firearm, identical 922 (g)(1) offenses which could only vary in time and location but not in their essential elements").[5]

On the other hand, the First and Ninth Circuits apply what has been "characterized as a broader, more holistic approach that looks to a variety of factors, including temporal proximity and potential for evidentiary overlap." *United States v. Jawara*, 474 F3d 565, 576 (9th Cir 2007). For example, the First Circuit conducts a more comprehensive review of the allegations in the indictment by "consider[ing] such factors as whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, *** the time frame in which the charged conduct occurred," and whether "[w]itnesses and testimony would also overlap." *United States v. Edgar*, 82 F3d 499, 503 (1st Cir), *cert den*, 519 US 870 (1996) (internal quotation marks omitted). The Ninth Circuit has stated:

> "We consider it appropriate to consider factors such as the elements of the statutory offenses, the temporal proximity of the acts, the likelihood and extent of evidentiary overlap, the physical location of the acts, the modus operandi of the crimes, and the identity of the victims in assessing whether an indictment meets the 'same or similar character' prong of Rule 8(a). The weight given to a particular factor will depend on the specific context of the case and the allegations in the indictment. But the bottom line is that the similar character of the joined offenses should be ascertainable—either readily apparent or reasonably inferred—from the face of the indictment. Courts should not have to engage in inferential gymnastics or resort to implausible levels of abstraction to divine similarity. Thus, where the government seeks joinder of counts on the basis

---

[5] The Seventh Circuit has, however, also considered factors such as temporal proximity and evidentiary overlap. *See United States v. Hubbard*, 61 F3d 1261, 1270-71 (7th Cir 1995), *cert den*, 516 US 1175 (1996) (concluding that weapons and narcotics charges were not of the same or similar character because the firearms were discovered "more than seventeen months after the May 1991 narcotics transaction," the "indictment itself offer[ed] nothing more from which one might possibly infer a connection between the two criminal acts," and, although the location of the firearms and cocaine was the same, the evidentiary overlap was "extremely slight").

of 'same or similar character,' it crafts a barebones indict-
ment at its own risk."

*Jawara*, 474 F3d at 578.[6]

We conclude that the analysis undertaken by
Oregon's courts more closely corresponds with the First and
Ninth Circuits that conduct a "comprehensive review" of the
allegations in the indictment, and which takes into consid-
eration a variety of factors, including the potential for evi-
dentiary overlap and temporal proximity. *Id.*

For example, in *Taylor*, the Supreme Court con-
cluded that multiple robbery offenses that arose out of two
separate bank robberies were properly joined "on the basis
of their 'similar character'" under ORS 132.560, because
the victims and evidence were similar, "[m]ost of the alleged
facts [we]re elements of the offense of third-degree robbery
*** with one additional circumstance," and "the indictment
allege[d] that, on two different dates, defendant committed
similar acts, in the same county, with the same intent, and
under the same circumstance of, at a minimum, represent-
ing that he was armed with a firearm." 364 Or at 374-77, 377
n 5. The court noted, however, that "not *** all crimes of
robbery are, necessarily, of the same or similar character."
*Id*. at 377 n 7.

We have also applied a similar approach that con-
siders the specific factual allegations in the indictment

---

[6] As the Ninth Circuit observed, "[s]ome other circuits are less easily cate-
gorized," but they also consider factors such as "temporal proximity" and "the
extent of evidentiary overlap." *Jawara*, 474 F3d at 576 n 7 (citing *United States
v. Holloway*, 1 F3d 307, 310-11 (5th Cir 1993) (concluding that felon in posses-
sion of a firearm and robbery charges were not of the same or similar character
when "there was no allegation that *** the weapon was in any way connected
to the charged robberies or any robbery" and the gun was found in Holloway's
possession "almost two months after the most recent robbery," because joinder
would "get before the jury evidence that likely would be otherwise inadmissible,
*i.e.*, that Holloway was a convicted felon and that he had a weapon on his person
when he was arrested"); *United States v. Werner*, 620 F2d 922 (2nd Cir 1980)
(in assessing whether charges are of the same or similar character, the Second
Circuit also looks to whether "the testimony at the trial for each offense would
very likely have included evidence of the other"); *United States v. Halper*, 590 F2d
422, 431 (2nd Cir 1978) ("[J]oinder of offenses under the Rule 8(a) rubric of 'same
or similar character' has been upheld where evidence of the one offense would be
admissible in a separate trial on the other offense as evidence of 'other crimes,
wrongs, or acts.'")).

and a multitude of factors when assessing the propriety of joinder on the basis of "same or similar character" under ORS 132.560. Recently, in *State v. Buyes*, we concluded that the charged offenses of first-degree sodomy and first-degree sexual abuse were of the same or similar character when the charges arose from the abuse of the defendant's nephews, because "his offenses were based on the patently 'similar conduct' of targeting his young, male family members for sexual purposes" and "the fact that defendant's charged offenses were separated by a number of years d[id] not negate the 'same or similar character' of defendant's conduct concerning both victims." 280 Or App 564, 568-69, 382 P3d 562 (2016). *See, e.g.*, *State v. Miller*, 287 Or App 135, 148-49, 401 P3d 229 (2017) (concluding that it was apparent from the face of the indictment that charges of attempted murder, first-degree attempted assault, and unlawful use of a weapon were of the same or similar character because the charges all involved the "defendant's unlawful use of a firearm, on the same day, in the same county, and against the same victim"); *State v. Parker*, 119 Or App 105, 108-09, 849 P2d 1157, *rev den*, 317 Or 584 (1993) (charges of sexual abuse against three different children, who were 9, 10, and 11 years old, were of the same or similar character where "all of the abuse allegedly occurred at defendant's farm where they had visited him for picnics and gatherings" and "the evidence of defendant's *** conduct with each child would be admissible in each of the separate trials"); *State v. Rood*, 118 Or App 480, 482-83, 848 P2d 128, *rev den*, 317 Or 272 (1993) (concluding that charges of second-degree sodomy, first-degree sexual abuse, and endangering the welfare of a minor were properly joined on the basis of their similar character because "[a]ll three indictments charged defendant with sexual conduct with male children he had brought to his home for purposes of adoption").

Accordingly, we eschew the state's categorical approach, in which all sexual crimes against children would be of the same or similar character on the basis of that broad classification alone, in favor of a more thorough review that focuses on the particular allegations in the indictment. *See Taylor*, 364 Or at 375 ("[B]ecause determining proper joinder ultimately requires the court to look beyond a bare allegation

in the words of the joinder statute, alleging the factual basis for joinder may better serve the purposes" of "eliminat[ing] the need for a defendant to guess the state's basis for joinder and to make it possible for the trial court to determine, from the face of the indictment, whether the indictment complies with the joinder statute." (Internal quotation marks omitted.)).

In summary, to determine whether charges are of "the same or similar character" under ORS 132.560(1)(b)(A), we consider factors such as the temporal proximity of the acts, similarities in the elements of the offenses, whether there will be similar evidence or evidentiary overlap, and whether the charges involve the same or similar victims, locations, intent, modus operandi, or acts. The weight given to any one factor will necessarily depend on the particular allegations in the indictment.

B.  *Are the sodomy and sexual abuse charges of the same or similar character as the ECSA charges?*

Here, the indictment alleged that defendant committed first-degree sodomy (Count 1) and first-degree sexual abuse (Count 2) as follows:

"COUNT 1 [FIRST-DEGREE SODOMY]

"The defendant, on or about April 26, 2015, in Lane County, Oregon, did unlawfully and knowingly engage in deviate sexual intercourse with [K], a child under twelve years of age;

"COUNT 2 [FIRST-DEGREE SEXUAL ABUSE]

"The defendant, on or about April 26, 2015, in Lane County, Oregon, did unlawfully and knowingly subject [K,] a person under the age of 14 years, to sexual contact[.]"

Additionally, with regard to the first-degree ECSA charges, Counts 3 through 17 alleged, in pertinent part:

"The defendant, on or about November 17, 2014, in Lane County, Oregon, did unlawfully and knowingly duplicate a photograph of sexually explicit conduct involving a child *** while knowing or being aware of and consciously

disregarding the fact that creation of the visual recording of sexually explicit conduct involved child abuse."[7]

We conclude that the indictment fails to meet the requirements for joinder under ORS 135.630 and ORS 132.560, because the indictment does not sufficiently allege the basis for joining the sodomy and sexual abuse offenses with the ECSA offenses, either in the language of the joinder statute, or by alleging facts sufficient to demonstrate compliance with the joinder statute.[8]

1. *Elements of the offenses*

As we explain below, the indictment alleges three kinds of statutory violations requiring proof of different elements.

With regard to first-degree sodomy, ORS 163.405 (1)(b) (2015) provided that "[a] person who engages in deviate sexual intercourse with another person or causes another to engage in deviate sexual intercourse commits the crime of sodomy in the first degree if" the "victim is under 12 years of age." ORS 163.305(1) (2015) defined "deviate sexual intercourse" as "sexual conduct between persons consisting of contact between the sex organs of one person and the mouth or anus of another." Here, the indictment alleged the elements in the words of the statutory offense: (1) defendant "knowingly;" (2) "engage[d] in deviate sexual intercourse;" (3) "with [K], a child under twelve years of age." *See State v. Delaney,* 160 Or App 559, 567, 984 P2d 282, *rev den*, 329 Or 358 (1999) (the "precise nature of the deviate sexual intercourse is not an element of" first-degree sodomy).

With regard to first-degree sexual abuse, ORS 163.427(1)(a)(A) provides that "[a] person commits the crime of sexual abuse in the first degree when" that person

_____

[7] All of the ECSA charges except Count 9 were alleged to have occurred on November 17, 2014. Count 9 alleged that defendant committed the crime of first-degree ECSA on April 17, 2014.

[8] We note that the hearing on defendant's demurrer occurred on February 2, 2016, and that the trial court disallowed defendant's demurrer on February 12, 2016. As such, the trial court did not have the benefit of our decision in *Poston*, 277 Or App 137, which issued on March 30, 2016, or the numerous decisions that have applied and refined *Poston*'s demurrer analysis, and the Supreme Court's recent decisions in *Warren* and *Taylor*.

"[s]ubjects another person to sexual contact" and "[t]he victim is less than 14 years of age." ORS 163.305(6) defines "sexual contact" as "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party." The indictment alleged: (1) defendant "knowingly;" (2) "subject[ed];" (3) "[K,] a person under the age of 14 years, to sexual contact."

Hence, the sodomy and sexual abuse counts share some similar elements because they both allege that defendant knowingly engaged in some form of sexual contact with the same child, on the same date, in the same county. However, as we have observed, sexual abuse does not have the same elements as sodomy because "sexual abuse requires touching for the purpose of arousing or gratifying the sexual desire of either party," whereas "[t]he offense of sodomy requires deviate sexual intercourse and does not require proof of arousal or gratification of the sexual desire of either party." *State v. Moore*, 185 Or App 229, 230, 58 P3d 847 (2002).[9]

With regard to first-degree ECSA, under ORS 163.684(1), a person commits first-degree [ECSA] if the person "[k]nowingly *** duplicates *** a visual recording of sexually explicit conduct involving a child" and "[k]nows or is aware of and consciously disregards the fact that creation of the visual recording of sexually explicit conduct involved child abuse." A visual recording "includes, but is not limited to, photographs, films, videotapes and computer and other digital pictures, regardless of the manner in which the recording is stored." ORS 163.665(5). Additionally, "sexually explicit conduct" is defined as "actual or simulated" "[s]exual intercourse or deviant sexual intercourse," "[g]enital-genital, oral-genital, anal-genital or oral-anal contact," "[p]enetration of the vagina or rectum by any object," "[m]asturbation," "[s]adistic or masochistic abuse," or "[l]ewd exhibition of sexual or other intimate parts." ORS 163.665(3). Finally,

---

[9] On appeal, defendant does not contend that the sodomy and sexual abuse charges were improperly joined.

a "child" is defined as "a person who is less than 18 years of age." ORS 163.665(1). Here, the indictment alleged: (1) defendant "knowingly;" (2) "duplicate[d];" (3) "a photograph of sexually explicit conduct involving a child;" (4) while "knowing or being aware of and consciously disregarding the fact that creation of the visual recording of sexually explicit conduct involved child abuse."

First-degree ECSA, like first-degree sodomy, does not require proof of touching for the purpose of arousing or gratifying the sexual desire of either party. Additionally, first-degree ECSA does not require proof of any sexual contact between the defendant and a victim whatsoever. Furthermore, the conduct does not need to have actually occurred to prove first-degree ECSA because the conduct can be "simulated." *See State v. Stoneman*, 323 Or 536, 540, 920 P2d 535 (1996) (the "child's participation in the act must be real, *i.e.*, the sexual *act* may be 'simulated,' but the child's participation in that act cannot be" (emphasis in original)). Finally, although the sexually explicit conduct underlying the first-degree ECSA charges can be the same as, or similar to, the conduct underlying charges of first-degree sodomy and sexual abuse, it also includes a wide array of other sexually explicit conduct, some of which does not involve touching a child at all. *See* ORS 163.665(3) (defining "sexually explicit conduct" to include "[m]asturbation," and "[l]ewd exhibition of sexual or other intimate parts").

Here, it is not apparent from the face of the indictment what type of sexual acts were perpetrated against the child victims of the ECSA charges.[10] The only similarity between the elements of the ECSA charges and the sodomy and sexual abuse charges that is discernable from the face of the indictment is that the crimes have a similar theme of sexual exploitation of children who were less than 18 years of age. Under those circumstances, such a general theme, alone, does not allow joinder. *Cf. Taylor*, 364 Or at 377 n 7 (noting that "not *** all crimes of robbery are, necessarily, of the same or similar character").

_____

[10] Defendant does not dispute that the ECSA charges were properly joined with each other.

2.  *Temporal proximity and location*

The conduct underlying the ECSA charges was alleged to have occurred on or about April 17, 2014, and November 17, 2014, and the conduct underlying the sodomy and sexual abuse charges allegedly occurred on or about April 26, 2015. As such, the conduct depicted in the sexually explicit photographs that defendant duplicated could not have involved the charged sexual offenses against K, because the duplication occurred months before defendant allegedly sodomized and sexually abused K. Furthermore, because the alleged acts in the two sets of charges occurred several months apart and do not necessarily involve the same or similar acts perpetrated against the child victims, the similar, but general, location of the alleged acts, Lane County, does not assist us a great deal in our analysis. Under the circumstances here, we conclude that the temporal proximity and location factors do not favor joinder. *Cf. Miller*, 287 Or App at 148-49, (concluding that it was apparent from the face of the indictment that charges of attempted murder, first-degree attempted assault, and unlawful use of a weapon were of the same or similar character because the charges all alleged the "defendant's unlawful use of a firearm, on the same day, in the same county, and against the same victim"); *Meyer*, 109 Or App at 603 (defendant's five traffic offenses, which took place over the span of six years, were properly joined on the basis of their similar character under ORS 132.560(1)(b)(A) because the crimes were "all major traffic crimes occurring in the same county and involving defendant's driving").

3.  *Same or similar victims and mode of operation*

As noted above, the indictment does not demonstrate that the specific victim of the sodomy and sexual abuse charges, K, is the same child victim that was depicted in the computer files that formed the basis of the ECSA charges. Additionally, the indictment reveals only that K was under 12 years old when the alleged sodomy and sexual abuse offenses occurred, but none of the ECSA charges disclose anything about the ages or sex of the children, other than Counts 16 and 17, which specify the file name as "Kristina— 8yo Model." Thus, the indictment does demonstrate that

there are at least two similar victims involved—two girls under the age of 12. However, the 13 other ECSA counts do not disclose the ages or the sex of the children, and a "child" for purposes of first-degree ECSA is defined as "a person who is less than 18 years of age." ORS 163.665(1). Additionally, as discussed above, the ECSA charges do not require the state to prove that defendant subjected a child to sexual abuse at all, and the indictment does not disclose what type of "sexually explicit conduct" the children were subjected to for purposes of the ECSA charges. Accordingly, the indictment does not demonstrate that defendant had a distinct pattern or method of abusing child victims of a same or similar age or sex.

Because the two sets of charges do not require proof of overlapping elements and do not stem from common events, and because the indictment does not disclose the same or similar *modus operandi*, the general similarity of the age and sex of two of the victims does not demonstrate the same or similar pattern of conduct by defendant that would support the joinder of *all* of the ECSA charges with the sodomy and sexual abuse charges. *Cf. Taylor*, 364 Or at 376-77 (the factual allegations in the indictment demonstrated that the defendant's robbery charges were of the same or similar character, because all of the charges involved the defendant robbing several victims at two Siuslaw Banks while, at a minimum, representing that he was armed with a firearm); *Buyes*, 280 Or App at 568-69 (concluding that offenses of first-degree sodomy and first-degree sexual abuse were of the same or similar character when the charges arose from the abuse of the defendant's nephews, because "his offenses were based on the patently 'similar conduct' of targeting his young, male family members for sexual purposes").

4.  *Evidentiary overlap*

As for potential evidentiary overlap, the only named victim, K, whose centrality to the sodomy and sexual abuse charges is evident from the face of the indictment, is not included in the ECSA charges. Additionally, for the reasons outlined above, the lack of temporal proximity of the crimes and the lack of overlapping elements does not suggest that there is a significant potential for evidentiary overlap. That

is, it does not appear on the face of the indictment that proof of the ECSA charges depends on the evidence needed to prove the sodomy and sexual abuse charges. And, as we discuss in more detail below, although some of the information about the sexually explicit photographs might be relevant to prove that defendant had a sexual purpose when he committed the crime of first-degree sexual abuse, it does not appear from the face of the indictment that proof of the sodomy and sexual abuse charges depends on the evidence underlying the ECSA charges. Therefore, the evidentiary overlap does not appear to be significant on the face of the indictment.

   5.  *Conclusion*

        The only similarity that can be gleaned from this indictment is that all of the charges involve sexual offenses against children. For the reasons discussed above, such a general theme, alone, does not make those offenses, on the face of this indictment, of the "same or similar character."

        In short, when the state chooses to allege multiple crimes by using the wording of different statutory offenses, does not use the joinder language of ORS 132.560(1)(b)(A), and does not use some language specifying the crimes' similarities, it crafts a perfunctory indictment at its own peril. *See Taylor*, 364 Or at 375 (stating that "alleging the factual basis for joinder may better serve the purposes" of "eliminat[ing] the need for a defendant to guess the state's basis for joinder and to make it possible for the trial court to determine, from the face of the indictment, whether the indictment complies with the joinder statute" (internal quotation marks omitted)).

        The trial court erred when it concluded that the sodomy and sexual abuse charges were of the same or similar character as the ECSA charges, because the indictment fails to comply with ORS 132.560.

C.  *Harmless Error*

        That conclusion, however, does not complete our analysis. We must determine whether the trial court's erroneous disallowance of the demurrer affected defendant's substantial rights, and, therefore, was not harmless. *See*

*Warren*, 364 Or at 128-33 (discussing whether the erroneous disallowance of a demurrer is harmless under *former* ORS 138.230 (2015), *repealed by* Or Laws 2017, ch 529, § 26).[11]

As we stated in *Poston*, 277 Or App at 145, "whether improper joinder of charges affected the verdict depends on whether joinder led to the admission of evidence that would not have been admissible but for the [erroneous] joinder * * * and, if so, whether the evidence affected the verdict on those charges." However, in *Warren*, the Supreme Court clarified that a "harmless-error test [that] is limited to whether unfairly prejudicial evidence was admitted * * * is incomplete." 364 Or at 132. The court explained:

> "[I]mproper joinder can prejudice a defendant in several [other] ways, including if the defendant would testify regarding some charges but not others, if the defendant's defenses to the charges could be viewed as inconsistent, if the evidence of one charge might improperly influence the jury's verdicts on other charges, or if the evidence could confuse the jury."

*Id*. at 133.

### 1.  *Sodomy and sexual abuse charges*

We begin with whether the "evidence presented at a trial on the erroneously joined [ECSA] charges would be 'admissible,' as we used that term in *Poston*," in a trial in which defendant was charged only with first-degree sexual abuse and first-degree sodomy. *State v. Clardy*, 286 Or App 745, 772-73, 401 P3d 1188, *adh'd to as modified on recons*,

---

[11] *Former* ORS 138.230 (2015) provided, "After hearing the appeal, the court shall give judgment, without regard * * * to technical errors, defects or exceptions which do not affect the substantial rights of the parties." "It was replaced by ORS 138.257, which references Article VII (Amended), section 3, and uses the harmless error standard for that provision, as articulated in [*State v.*] *Davis*[, 336 Or 19, 77 P3d 1111 (2003)]. Or Laws 2017, ch 529, § 15." *Warren*, 364 Or at 128 n 11. ORS 138.257(2) provides, "Subject to Article VII (Amended), section 3, Oregon Constitution, the appellate court shall not reverse, modify or vacate a trial court judgment or order if there is little likelihood that any error affected the outcome." ORS 138.257 applies on appeal from a judgment entered by the trial court on or after January 1, 2018. Or Laws 2017, ch 529, § 28. The judgment that is being appealed in this case was entered before January 1, 2018. Therefore, as the court did in *Warren*, we apply *former* ORS 138.230 (2015) in conducting our harmless error analysis.

288 Or App 163, 406 P3d 219 (2017), *rev den*, 364 Or 680 (2019). As we explained in *Clardy*, 286 Or App at 772-73:

> "[E]vidence presented at a trial on erroneously joined charges would be 'admissible,' as we used that term in *Poston*, in a hypothetical trial on each charge or properly joined group of charges, only when (1) each item of evidence that was actually presented could have been admitted in the hypothetical trial under a legally correct evidentiary analysis and (2) it is implausible that, had the defendant objected under OEC 403 or raised some other objection invoking the trial court's discretion, the trial court would have excluded that evidence in the hypothetical trial."

Here, with regard to the charge of first-degree sexual abuse, the state was required to prove that defendant acted with a sexual desire that was aroused or gratified by sexual contact with K. *See* ORS 163.427(1)(a) (first-degree sexual abuse requires proof that a defendant subjected the victim, a person under the age of 14, to "sexual contact"); ORS 163.305(6) (defining "sexual contact" as "any touching of the sexual or intimate parts *** for the purpose of arousing or gratifying the sexual desire of either party"). Under the Supreme Court's evidentiary analysis in *State v. Williams*, 357 Or 1, 346 P3d 455 (2015), the evidence underlying the ECSA charges could be relevant in a trial in which defendant was charged with first-degree sexual abuse to prove that defendant acted with a sexual desire that was aroused or gratified by sexual contact with K. However, as explained below, other acts evidence remains subject to balancing under OEC 403, and we must determine whether "it is *implausible* that, had the defendant objected under OEC 403 or raised some other objection invoking the trial court's discretion, the trial court would have excluded that evidence in the hypothetical trial." *Clardy*, 286 Or App at 772-73 (emphasis added).

For the reasons that follow, we do not think that it is implausible that a trial court would exercise its discretion to exclude the evidence underlying the ECSA charges in a trial in which defendant was charged with first-degree sexual abuse and first-degree sodomy under OEC 403.

In *Williams*, the court observed that, in sexual abuse cases, "there is a slim but distinct difference in using" other acts evidence "to establish [a] defendant's character and propensity to act accordingly, and offering that evidence to establish [a] defendant's sexual purpose." 357 Or at 23. Additionally, the court recognized the "historical concern for the prejudice that such evidence poses and the importance that balancing plays in protecting against the harm that may result from its admission." *Id*. at 18 (citing *Old Chief v. United States*, 519 US 172, 180, 117 S Ct 644, 136 L Ed 2d 574 (1997) ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.")). As such, the court concluded that even if the other acts evidence is logically relevant, its admission "depends on whether the risk of unfair prejudice outweighs the probative value of the evidence under OEC 403," and that "[t]hat determination must be made on a case-by-case basis." *Id*. at 20.

In light of the evidence and arguments in this case, a trial court could conclude that the state had a limited need for the evidence underlying the ECSA charges in a hypothetical trial for sexual abuse and sodomy. Here, the state had evidence of defendant admitting to Grice that he was sexually attracted to K, and defendant did not deny that he was sexually attracted to K or that he was caught in a sexual situation with K. Defendant also admitted to Grice that he had masturbated in front of K and that he had other interactions with K that were sexual in nature, which included touching K's genitals. Furthermore, the state presented evidence that J caught defendant with his pants down and K partially naked on J's bed, strongly suggesting that defendant was acting with a sexual purpose when he was in the bedroom with K. As discussed, defendant's theory of defense was to admit to sexually abusing K but argue that he only attempted to commit sodomy. Given the evidence of defendant's sexual attraction to K specifically, and that defendant's theory of defense included admitting to the charge of sexual abuse, the central issue reduced to whether defendant completed the act of sodomy, and, thus, the state would have little need to

show that defendant was sexually aroused or gratified by sexual contact with children generally by introducing the evidence underlying the ECSA charges. *See Moore*, 185 Or App at 230 (noting that "sexual abuse requires touching for the purpose of arousing or gratifying the sexual desire of either party," whereas "[t]he offense of sodomy * * * does not require proof of arousal or gratification of the sexual desire of either party").

Under those circumstances, a trial court could conclude that the state's need for the evidence underlying the ECSA charges to prove defendant's sexual purpose for the charge of first-degree sexual abuse was relatively low and was substantially outweighed by the potential for "unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence," because the ECSA evidence has the potential to be used for the improper purpose of proving that defendant completed the charged crime of first-degree sodomy. OEC 403. *See also Warren*, 364 Or at 133 (a defendant can be prejudiced by improper joinder "if the evidence of one charge might improperly influence the jury's verdicts on other charges, or if the evidence could confuse the jury"); *Clardy*, 286 Or App at 772 (observing that the probative value of evidence might be relatively low in light of other available evidence on the same issue, and that the risk of unfair prejudice could be comparatively high under those circumstances). In other words, we cannot conclude that it is "implausible" that the trial court would have excluded the ECSA evidence under OEC 403 in a hypothetical trial for sexual abuse and sodomy. *Clardy*, 286 Or App at 772-73; *see also State v. Keith*, 294 Or App 265, 272-73, 431 P3d 94 (2018), *adh'd to as modified on recons*, 299 Or App 355, 450 P3d 1034 (2019) ("Although some theories of relevance might be conceptualized, we cannot conclude that such evidence would be admitted given the probative value in comparison to the risk of unfair prejudice.").

As the court explained in *Warren*, we must also take into consideration whether defendant was prejudiced in other ways, including if defendant's defenses to the sodomy and sexual abuse charges could be viewed as inconsistent

with defendant's defense on the ECSA charges, and if defendant would have testified regarding the sodomy and sexual abuse charges, but not the ECSA charges. *Warren*, 364 Or at 133.

In this case, defendant wished to testify regarding the sodomy and sexual abuse charges, but he did not want to testify and be subjected to cross-examination regarding the ECSA charges. *See, e.g.*, *State v. Cox*, 337 Or 477, 491-92, 98 P3d 1103 (2004) ("A criminal defendant has both a statutory and a constitutional right to testify in his or her own defense * * * [that] is subject to the state's right to cross-examine him or her."). With regard to defendant's theory of defense to the ECSA charges, defendant did not dispute the existence of the images on his thumb drive. Defendant contended that the state could not present sufficient evidence to prove that defendant had knowingly "duplicated" the images, and, thus, the jury should return guilty verdicts for the lesser-included offense of second-degree ECSA based on his knowing "possession" of the images.

On the other hand, defendant's theory of defense to the sodomy and sexual abuse charges was that he did not complete the act of sodomy. Defendant relied on K's repeated statements and K's testimony that defendant never committed sodomy because J had interrupted defendant before he could complete the act. Additionally, defendant argued that his admission to Grice that he had pressed his penis against K's anus was the result of the lengthy interrogation and Grice's lie to defendant about K stating that K had felt defendant's penis push against her anus. However, defendant chose not to testify following the improper joinder of the charges due to his theory of defense for the ECSA charges, which did not include defendant testifying. Instead of testifying to refute his admission to Grice, which went to the heart of the sodomy and sexual abuse charges, defendant presented expert testimony about confessions and circumstances that can affect a person's memory. In that way too, defendant was prejudiced by the improper joinder, because the joint trial affected his defense in one of the ways that the court identified in *Warren*. *See also Keith*, 299 Or App at 359-60 (on reconsideration, concluding that the defendant

suffered additional harm from the erroneous disallowance of a demurrer where the defendant had argued two ways that "his trial strategy would change if the counts were properly severed," *viz.*, that the defendant "would challenge the admissibility of evidence that would not be subject to challenge in a trial of all the charges," and that the "defendant would choose to exercise his right to testify differently in separate trials").

Finally, because the joint trial affected his defense in one of the ways that the court identified in *Warren*, and because the ECSA evidence had the potential to be used for the improper purpose of establishing that defendant completed the act of sodomy against K, we cannot conclude that that evidence would not have affected defendant's substantial rights in a trial in which defendant was charged only with sodomizing and sexually abusing K. Given the evidence and defendant's theory of defense in this case, it is not the type of evidence that "might be so benign that its admission has little likelihood of affecting the verdict on the [sodomy and sexual abuse] *** charges." *Clardy*, 286 Or App at 773 n 8. *See State v. Walsh*, 288 Or App 331, 336-37, 406 P3d 152 (2017), *rev den*, 364 Or 680 (2019) (recognizing that "[i]n making that assessment, *** by relying on multi-tiered assumptions about hypothetical trials, we encounter increasing difficulty in determining the likely effect of evidence and, accordingly, in concluding whether, as a matter of law," that the error was harmless). Therefore, based on the record in this case, we conclude that the erroneous disallowance of defendant's demurrer affected defendant's "substantial rights," as required for reversal of his first-degree sodomy and sexual abuse convictions under *former* ORS 138.230 (2015).

2.  *ECSA charges*

We now turn to whether the error was prejudicial with respect to the ECSA charges. We begin by considering whether the evidence presented at trial for the sodomy and sexual abuse charges would have been admissible in a hypothetical trial in which defendant was only charged with ECSA.

Without any facts demonstrating that defendant's act of sodomizing and sexually abusing K was related to his duplication of child pornography several months earlier, we think it highly unlikely that the evidence of defendant sodomizing and sexually abusing K would have been admissible in a trial for duplicating child pornography. Additionally, the evidence related to defendant sodomizing and sexually abusing K would have invited the jury to convict the defendant of duplicating child pornography because he is a person with a propensity to sexually abuse children, and it might have distracted the jury from the central question of whether defendant committed the charged crime of ECSA. *See Williams*, 357 Or at 20 (other acts evidence that goes only to the character of the accused "generally will have little or no cognizable probative value, and the risk that the jury may conclude improperly that the defendant had acted in accordance with [other] acts on the occasion of the charged crime will be substantial"). Nor can we conclude that there is little likelihood that that evidence would have affected the verdict given the lack of probative value in comparison to the substantial risk of unfair prejudice. Accordingly, we conclude that the erroneous disallowance of the demurrer affected defendant's "substantial rights" with respect to the ECSA charges, as required for reversal under *former* ORS 138.230 (2015).

### III.   CONCLUSION

The trial court erred when it disallowed defendant's demurrer and the disallowance of the demurrer was not harmless.

Reversed and remanded for entry of judgment allowing defendant's demurrer.