Submitted August 2, reversed and remanded for resentencing;
otherwise affirmed September 21, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BENJAMIN RAY BRYANT,
*Defendant-Appellant.*

Umatilla County Circuit Court
CF090165; A143569

263 P3d 368

Peter Gartlan, Chief Defender, and Zachary L. Mazer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and David B. Thompson, Senior Assistant Attorney General, filed the brief for respondent.

Before Brewer, Chief Judge, and Edmonds, Senior Judge.

BREWER, C. J.

## BREWER, C. J.

Defendant appeals from his convictions for second-degree assault and assaulting a public safety officer, arguing, *inter alia*, that the trial court erred by assigning an increased criminal history score to his conviction on Count 3 (assault of a public safety officer) based on his convictions on Counts 1 and 2 (assault in the second-degree and assault of a public safety officer, respectively), because all three counts arose out of the same criminal episode.[1] The state concedes that the trial court erred in so doing. As explained below, we agree. Accordingly, we reverse and remand for resentencing.

The pertinent facts are undisputed. On the day he committed the crimes at issue here, defendant was incarcerated at the Eastern Oregon Correctional Facility and had been let out of his cell along with another inmate, Neal, by Officer Lake, a corrections officer at the facility. Lake had let Neal and defendant out of their cell after they asked to get water from a day room. As Neal and defendant were looking at a bulletin board in the day room, Neal called out to Lake. As Lake approached Neal, Neal asked Lake about a canteen call schedule posted on the bulletin board. When Lake began to answer Neal's question, defendant attacked, striking him nine times in the head with his fists. Neal began striking Lake as well, and, when he fell to the floor, both inmates kicked and punched him. Within moments, a second officer, Frye, attempted to intervene. He placed himself between the inmates and Lake; both Neal and defendant then began striking Frye. Frye was able to convince both inmates to "back off," but, as Lake began to stand up, both inmates again began striking Frye. Lake, by this time on his feet, sprayed both Neal and defendant with chemical spray. Defendant began to flee, but fell. Neal struck Lake again, knocking him backwards. As Lake attempted to regain his footing and to spray Neal, defendant struck him in the eye, knocking him to the ground. Defendant continued trying to hit Lake, and, when defendant "backed off a bit," Lake was able to "front kick him." Defendant and Neal stopped their assault, came

---

[1] Because of our disposition of that assignment of error, we need not reach his remaining contentions.

together, looked at Lake, and "high-fived" one another. The assault lasted roughly one minute.

For that conduct, defendant was convicted of one count of second-degree assault and two counts of assaulting a public safety officer. At sentencing, the trial court assigned defendant a criminal history score of 6C on Count 3, based on his convictions on Counts 1 and 2. However, defendant argued that the proper criminal history score was 6E, because all three counts had arisen out of the same "criminal episode," and, thus, Counts 1 and 2 could not be used to enhance his criminal history score for purposes of sentencing on Count 3. The trial court rejected defendant's argument and imposed a sentence of 18 months' incarceration on Count 3, consecutive to the sentences imposed on Counts 1 and 2. This appeal followed.

Defendant renews his argument on appeal, and, as noted, the state concedes that the trial court erred. We find the state's concession to be well founded. As we have explained,

> "[a] defendant's criminal history score is used to calculate the sentence the court is to impose. OAR 213-004-0006. The score is determined by several factors, including the number and character of the offender's prior convictions. *Id.* When multiple convictions occur in the same proceeding, ones occurring in an earlier criminal episode may be used to recalculate the defendant's criminal history score with respect to convictions stemming from a later criminal episode. *State v. Bucholz,* 317 Or 309, 317, 855 P2d 1100 (1993); *State v. Allen,* 151 Or App 281, 290-91, 948 P2d 745 (1997). In contrast, when a defendant's multiple convictions *stem from the same criminal episode,* his criminal history score remains the same with respect to all of those convictions."

*State v. Norman,* 216 Or App 475, 485-86, 174 P3d 598 (2007), *vac'd on other grounds,* 345 Or 319, 207 P3d 423 (2008) (emphasis added). As we recently observed, the term "criminal episode" appears in many different contexts, and its meaning can vary with the context in which it is used. *State v. Potter,* 245 Or App 1, 4, 260 P3d 815 (2011). For purposes of calculating a defendant's criminal history score under OAR 213-004-0006, we have held that crimes arise out

of the same "criminal episode" where the "circumstances are so interrelated that a complete account of one offense cannot be related without relating details of the other(s)." *Norman*, 216 Or App at 489.

Here, Count 3 of the indictment charged defendant with assaulting a public safety officer, Frye. It is apparent from our recitation of the facts in this case that defendant's assault of Frye was so interrelated with his assault of Lake that a complete account of defendant's conduct against Frye cannot be related without also relating details of defendant's conduct directed at Lake. Accordingly, defendant's crimes arose out of the same "criminal episode," and the trial court erred in using defendant's convictions on Counts 1 and 2 as part of its calculation of his criminal history score for purposes of sentencing on Count 3.

Reversed and remanded for resentencing; otherwise affirmed.