Argued and submitted February 15, 2018, reversed and remanded
December 26, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES EDWARD GIALLORETO,
*Defendant-Appellant.*

Washington County Circuit Court
C151728CR; A162216

457 P3d 1105

Defendant appeals a judgment of conviction for 11 offenses. Defendant argues that the trial court erred when it denied his demurrer to the indictment, which was premised on the indictment's failure to allege a sufficient basis for joinder. Specifically, he argues that the indictment's allegations of public indecency were not of the same or similar character as the indictment's allegations of rape and related charges, as required by the applicable joinder standard. The state responds that the charges were of the same or similar character because all of the charges in the indictment were sexual offenses. *Held*: The trial court erred. Applying the standard recently announced by the Court of Appeals in *State v. Garrett*, 300 Or App 671, 455 P3d 979 (2019), the public-indecency allegations of the indictment were not of the same or similar character as the balance of the charges. Additionally, the error was not harmless.

Reversed and remanded.

Eric Butterfield, Judge.

Jesse Merrithew argued the cause for appellant. Also on the brief was Levi Merrithew Horst PC.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and DeVore, Judge, and Aoyagi, Judge.*

DEHOOG, P. J.

Reversed and remanded.

_____

* DeVore, J., *vice* Hadlock, J. pro tempore.

**DEHOOG, P. J.**

This appeal presents our first opportunity to apply our recent decision in *State v. Garrett*, 300 Or App 671, 455 P3d 979 (2019), in which we construed the phrase "same or similar character" in the criminal code's joinder provision, ORS 132.560(1)(b). Defendant's appeal raises four assignments of error. Because it is dispositive, we address only the first. In that assignment, defendant argues that the trial court erred in denying his demurrer to the indictment, which was premised on the indictment's failure to allege a sufficient basis for joinder. As we explain below, we agree that the trial court erred in denying defendant's demurrer and proceeding to try all counts of the indictment in a single trial.[1] The indictment neither expressly alleges a statutory basis for joinder nor contains allegations of fact sufficient to demonstrate compliance with the joinder statute. Specifically, the allegations of the indictment do not indicate that Counts 8 through 11 of the indictment, each of which alleged an identical count of public indecency, were of the "same or similar character" as the balance of the charges; as a result, the trial court erred in denying defendant's demurrer. That error was not harmless. We therefore reverse and remand.

The indictment in this case charged defendant with rape in the first degree, ORS 163.375 (Count 1); robbery in the first degree, ORS 164.415 (Count 2); burglary in the first degree, ORS 164.225 (Count 3); assault in the second degree, ORS 163.175 (Count 4); two counts of unlawful use of a weapon, ORS 166.220—one count alleging the use of a hammer (Count 5), the other the use of a knife (Count 6)—strangulation, ORS 163.187 (Count 7); and four counts of public indecency, ORS 163.465 (2015) *amended by* Or Laws 2019, ch 65, § 1 (Counts 8 through 11). Defendant's charges arose after the complainant, J, who was an upstairs neighbor of defendant, reported to police that he had forced his way into her apartment, attacked her with a hammer, threatened her with a knife, choked her with a ligature, and then

---

[1] Defendant also argues under the first assignment of error that the trial court erred in denying his related motion to sever. Our decision regarding defendant's demurrer obviates further consideration of that argument.

raped her. J testified to those events at trial and said that she had offered to give defendant money if he would leave and not rape her, but that he had both taken her money *and* raped her. In support of the public-indecency allegations, J also testified that she had seen defendant masturbating in his home through a window near the base of her stairway. J's daughter testified that she had heard defendant watching pornography and masturbating the day that J moved into defendant's building. Finally, another of defendant's neighbors also testified that she had heard him masturbating.

The indictment alleged that six of the first seven counts—those alleging rape, robbery, assault, strangulation, and two acts of unlawful use of a weapon—had all been committed against J on or about June 10, 2015.[2] The last four counts, on the other hand, alleged neither a victim nor a specific offense date. Rather, those four counts each alleged the offense of public indecency in identical terms, as follows:

> "In a separate act and transaction from the crimes alleged in the above counts, the defendant, on or between May 1, 2015 and June 10, 2015, in Washington County, Oregon, did unlawfully and with intent of arousing the sexual desire of defendant or another person, expose his genitals while in view of a public place."

Before trial, defendant filed a demurrer under ORS 135.630 and argued that the indictment failed to satisfy ORS 132.560, because it did not allege any basis for joining the public-indecency charges, Counts 8 through 11, with the remaining charges, Counts 1 through 7. The trial court denied defendant's demurrer. Defendant waived his right to a jury and, following a bench trial, was convicted on all counts. This appeal followed.

"We review the disallowance of a demurrer for legal error." *State v. Miller*, 296 Or App 421, 422, 439 P3d 504 (2019). In his opening brief, defendant argued—based on

---

[2] Although the burglary count did not allege a named victim, it too alleged that the offense had occurred on or about June 10, 2015, and further alleged that defendant had "unlawfully and knowingly enter[ed] or remain[ed] in a dwelling with the intent to commit the crime of rape therein." The rape charge, in turn, identified the alleged victim by name, as did the remainder of the first seven counts.

our decision in *State v. Poston*, 277 Or App 137, 370 P3d 904 (2016) (*Poston I*), *adh'd to on recons*, 285 Or App 750, 399 P3d 488, *rev den*, 361 Or 886 (2017)—that the trial court had erred in disallowing his demurrer, because the indictment in his case did not comply with the joinder requirements of ORS 132.560(1)(b).[3] In the state's response, which it filed before the Supreme Court had issued its decisions in *State v. Warren*, 364 Or 105, 430 P3d 1036 (2018), and *State v. Taylor*, 364 Or 364, 434 P3d 331 (2019), it argued that defendant's argument was wrong for two reasons. The state first argued that our decision in *Poston I* was itself incorrect, because the question of whether an indictment complied with the joinder requirements of ORS 132.560 (1)(b) was not, as we had held in that case, a question of facial sufficiency, but a matter to be decided as a factual inquiry in the context of a motion to sever. That argument is now foreclosed by *Warren*. 364 Or at 113. Second, the state argued that, even if our decision in *Poston I* correctly stated the law, the indictment here alleged a sufficient basis for joinder because the charges were all "sexual offenses." We proceed to consider whether, under current case law, defendant's public-indecency charges were properly joined with the balance of his alleged offenses for trial.

An indictment that charges more than one offense must allege one or more of the authorized bases for joinder listed under ORS 132.560(1)(b), namely, that the charges are "(A) Of the same or similar character," "(B) Based on the same act or transaction," or "(C) Based on two or more transactions connected together or constituting parts of a common scheme or plan." *See Warren*, 364 Or at 109-10 (discussing our decision in *Poston I*); ORS 135.630(2) (authorizing demurrer if the indictment "does not substantially conform to the requirements of *** [ORS] 132.560"). "[A]n indictment can allege the basis for joinder either 'in the language of the joinder statute [ORS 132.560(1)(b)] or by alleging facts sufficient to establish compliance with the joinder statute.'" *Taylor*, 364 Or at 375 (quoting *Warren*, 364 Or at

---

[3] As he did in the trial court, defendant limits his argument to whether Counts 8 through 11 were properly joined with the other counts; defendant has never contended that Counts 1 through 7 were improperly joined, and we express no opinion on that matter in this case.

109, and adopting the analysis set forth in *Poston I*). If the state chooses to rely on factual allegations to establish joinder, the indictment should "allow the defendant to understand the state's basis for joining the offenses and allow the court to determine whether that joinder is proper." *Taylor*, 364 Or at 375. Whether an indictment's joinder allegations are sufficient to withstand a demurrer "must be resolved based on the face of the charging instrument"; a court "cannot consider facts other than those alleged in the charging instrument." *Warren*, 364 Or at 113 (citing *State v. Pinnell*, 319 Or 438, 444, 877 P2d 635 (1994)).

Here, it is undisputed that the indictment does not expressly allege a basis for joinder using the language of ORS 132.560(1)(b). Thus, we consider whether the indictment's factual allegations are sufficient to demonstrate compliance with that provision. *See Taylor*, 364 Or at 375 (providing for that approach). Further, we focus our attention on ORS 132.560(1)(b)(A), which authorizes the joinder of offenses of the "same or similar character," because the parties agree that only that provision provides a potential basis for joinder here.[4]

In the state's view, defendant's public-indecency charges satisfy "the same or similar character" requirement of ORS 132.560(1)(b)(A) because they, like Counts 1 though 7, are all "sexual offenses."[5] The merit of that argument depends on the meaning of the phrase "same or similar character." That, in turn, presents a question of statutory construction, evoking the familiar interpretive framework

---

[4] Because the indictment in this case states that the public-indecency counts stem from "separate act[s] and transaction[s]," they are *not* based "on the same act or transaction" as the other counts, ORS 132.560(1)(b)(B). Further, although the state argued at trial that, on its face, the indictment sufficiently alleged that all of its counts were "connected together or constitut[ed] parts of a common scheme or plan," ORS 132.560(1)(b)(C), it does not advance that argument on appeal. *See also Miller*, 296 Or App at 423 ("If the state chooses to allege facts instead of the language of ORS 132.560(1)(b)(C) in an indictment, the state must use some language specifically connecting the crimes together, or specifying the crimes' common scheme or plan." (Internal quotation marks omitted.)). Thus, we focus on ORS 132.560(1)(b)(A).

[5] As noted, defendant has never contended that Counts 1 through 7 were improperly joined, and we express no opinion on whether they all allege "sexual offenses" as the state contends or whether, for that or some other reason, they satisfy the joinder statute.

set forth in *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). In this case, however, both our understanding of the phrase "same or similar character" and our review of the indictment in light of that understanding are substantially guided by our decision in *Garrett*, which undertook the same analysis. Accordingly, we turn to an examination of that case.

In *Garrett*, the defendant was charged by indictment with one count of first-degree sodomy and one count of first-degree sexual abuse, both alleged to have been committed against the same child, as well as 15 counts of first-degree encouraging child sexual abuse (ECSA). 300 Or App at 675. Before trial, the defendant filed a demurrer, arguing that the indictment was defective because it failed to allege any basis for joining the ECSA charges with his charges of sodomy and sexual abuse. *Id*. The state responded that the charges were properly joined as being of "the same or similar character," ORS 132.560(1)(b)(A); specifically, they all related to the sexual abuse of a child. *Id*. at 676. The trial court denied the defendant's demurrer, and, following a joint trial on all counts, the defendant appealed that ruling. *Id*. at 676, 678.

On appeal, we recognized, as we had previously, that ORS 132.560(1)(b), and, specifically, the "same or similar character" language of ORS 132.560(1)(b)(A), is modeled after FRCrP 8(a); we also observed that "'the legislators who approved the amendment [adopting that phrase] intended the Oregon statute to be construed consistently with the federal rule.'" *Id*. at 679-80 (quoting *Poston I*, 277 Or App at 144). Accordingly, we looked to federal case law construing FRCrP 8(a) for guidance in construing the phrase "same or similar character" in our own statute. *Id*. at 680 (citing *State v. Walker*, 356 Or 4, 23-24, 333 P3d 316 (2014) (explaining that federal case law predating the enactment of an Oregon statute modeled on a federal statute provides useful context in construing our own statute; later case law is considered only for such persuasive value as it may have)).

Following a canvas of approaches adopted in various federal circuits—including the Ninth Circuit's approach in *United States v. Jawara*, 474 F3d 565 (9th Cir 2007)—as

well as a review of Oregon case law addressing ORS 132.560 (1)(b)(A), we concluded that

> "the analysis undertaken by Oregon's courts more closely corresponds with the First and Ninth Circuits that conduct a 'comprehensive review' of the allegations in the indictment, and which takes into consideration a variety of factors, including the potential for evidentiary overlap and temporal proximity."

*Garrett*, 300 Or App at 682. In drawing that conclusion, we rejected what we viewed as "a narrower categorical approach," such as that taken by the Seventh Circuit in *United States v. Coleman*, 22 F3d 126, 133-34 (7th Cir 1994), "which focuses almost exclusively on the likeness of the 'class' or category of the offenses and does not necessarily depend on temporal proximity or evidentiary similarity." *Garrett*, 300 Or App at 680, 683 (comparing the Seventh Circuit's approach to that suggested by the state, which broadly characterized the defendant's alleged conduct as "sexual crimes against children"). We therefore also found it necessary to "eschew the state's categorical approach, in which all sexual crimes against children would be of the same or similar character on the basis of that broad classification alone, in favor of a more thorough review that focuses on the particular allegations in the indictment." *Id*. at 683.

Ultimately, in *Garrett*, we established the following analysis under ORS 132.560(1)(b)(A), which, informed by the federal authorities that we found most persuasive, we had distilled from Oregon case law:

> "[T]o determine whether charges are of 'the same or similar character' under ORS 132.560(1)(b)(A), we consider factors such as the temporal proximity of the acts, similarities in the elements of the offenses, whether there will be similar evidence or evidentiary overlap, and whether the charges involve the same or similar victims, locations, intent, modus operandi, or acts. The weight given to any one factor will necessarily depend on the particular allegations in the indictment."

*Id*. at 684. Upon applying our new analysis to the indictment at issue in that case, we concluded that the defendant's

ECSA charges were not of the same or similar character as his allegations of sodomy and sexual abuse. *Id*. at 690.

We turn to an application of the principles articulated in *Garrett* to the indictment challenged in this case. First, as we did in *Garrett*, we "eschew the state's categorical approach," *id*. at 683 (rejecting broad classification of offenses as "sexual crimes against children"), which here would categorize all of the charges in the indictment as "sexual offenses." However, taking that characterization as a reference point of sorts, we begin by comparing defendant's public-indecency charges with the only other charge in the indictment that necessarily involves sexual conduct, Count 1, alleging rape in the first degree under ORS 163.375.[6] The indictment alleged that offense as follows:

"Count 1: RAPE IN THE FIRST DEGREE (*** ORS 163.375)

"* * * * *

"The defendant, on or about June 10, 2015, in Washington County, Oregon, did unlawfully and knowingly engage in sexual intercourse with [J] by means of forcible compulsion."

As charged in this case, a person commits the crime of rape in the first degree if the person "has sexual intercourse with another person" and "[t]he victim is subjected to forcible compulsion." ORS 163.375(1)(a). And, to prove that offense as alleged in the indictment, the state had to establish that defendant: (1) knowingly; (2) engaged in sexual intercourse; (3) by means of forcible compulsion; (4) with J; (5) on or about June 10, 2015; (6) in Washington County.

Public indecency, as charged here, is defined as "[a]n act of exposing the genitals *** with the intent of arousing the sexual desire of the person or another person" "while in, or in view of, a public place." ORS 163.465(1)(c) (2015). To prove each offense of public indecency as alleged in the indictment, the state needed to establish that defendant: (1) exposed his genitals; (2) while in view of a public

---

[6] As noted above, 301 Or App at 588 n 3, defendant does not contend that any of Counts 1 through 7 were improperly joined with each other. Thus, if the public-indecency counts, Counts 8 through 11, were properly joined with any of the first seven counts, then the trial court did not err in denying defendant's demurrer.

place; (3) with the intent of arousing the sexual desire of defendant or another person; (4) between May 1, 2015 and June 10, 2015; (5) in Washington County. Further, given the way that each of Counts 8 through 11 were charged, the state would also need to establish that each of those offenses had been committed "[i]n a separate act and transaction from the crimes alleged" in all of the other counts.

Comparing just the material elements of each offense—that is, setting aside for now our consideration of the significance of the alleged date and location of each offense—there is little if any similarity between the elements of defendant's rape charge and his public-indecency charges. Rape requires a specific form of physical contact—sexual intercourse—with another person—the victim—while public indecency requires neither physical contact of any kind nor the involvement of any other person; it only requires that the person's act of exposure be in, or in view of, a public place. *See Garrett*, 300 Or App at 687 (noting similar distinction between sodomy and encouraging child sexual abuse). Additionally, public indecency includes an intent element—the intent to arouse the sexual desire of the person or another person—while rape in the first degree requires proof of knowing rather than intentional behavior and sexual desire is irrelevant; the focus of that crime is violence or a threat of violence, namely, the use of forcible compulsion, and not the sexual desires of either the defendant or the victim. *See* ORS 163.305(1) ("Forcible compulsion" includes both the use of physical force and an express or implied threat causing fear of injury or death). *See also Garrett*, 300 Or App at 686-87 (considering the factor that, unlike first-degree sexual abuse, neither sodomy nor ECSA require proof of arousal or gratification of the sexual desire of either party).

We turn to temporal proximity. Here, the indictment alleges that Counts 1 through 7 all occurred on or about June 10, 2015. Furthermore, other contextual clues on the face of the indictment suggest that those offenses all occurred in the same incident. For example, except for the burglary charge noted above, all of those allegations name J as the victim; the underlying crime for the burglary charge, Count 3, is rape, as alleged in Count 1; the robbery and

assault charges, Counts 2 and 4, allege the use of a danger-
ous weapon; Counts 5 and 6 allege possession of a danger-
ous weapon; and so on. Thus, the indictment provides an
ample factual basis—in addition to the fact that the first
seven offenses are alleged to have occurred on or about the
same date—for a reader to infer that those offenses were
temporally connected.

      The same is not true as to the public-indecency
charges. Rather than being alleged as having occurred on
the same specific date as Counts 1 through 7 (on or about
June 10), Counts 8 through 11 are alleged to have occurred
sometime over a range of dates (May 1 through June 10),
with only the end date corresponding to the alleged date of
the first seven offenses. More significantly, perhaps, none of
the factual allegations of the last four offenses correspond in
any apparent way to the first seven offenses charged, thus
those allegations do not support an inference that they were
temporally related. Finally, the indictment expressly alleges
that each of the last four counts occurred in "a separate act
and transaction" from every other count of the indictment.
Although that does not necessarily suggest that each act of
public indecency occurred on a date other than the alleged
date of the home-invasion, it certainly suggests that none of
those instances of public indecency occurred as part of the
same incident as the first seven counts. Thus, this factor,
like the comparison of the elements of each offense, tends
to suggest that the indictment does not satisfy the "same or
similar character" requirement of ORS 132.560(1)(b)(A).[7]

      As to the remaining considerations, including such
things as "similar evidence or evidentiary overlap, and
whether the charges involve the same or similar victims,
locations, intent, modus operandi, or acts," *Garrett*, 300 Or
App at 684, nothing in the allegations of the indictment
suggests the presence of any of those factors. We recognize,
based on the evidence produced at trial, that the offenses
were all alleged to have occurred in more or less the same

---

[7] We do not mean to suggest that offenses that occur over a matter of weeks
cannot be temporally proximate, but only that here, the manner in which the
indictment alleges incident dates and other facts does not suggest a temporal
*relationship* that weighs in favor of a determination that the various offenses
were of the same or similar character.

location—defendant's apartment building.[8] Also, even though there is no apparent evidentiary overlap between the two sets of offenses and, as noted, the offense of public indecency does not require a victim, the record tell us that there was at least one witness in common between the first seven counts of the indictment and the public-indecency counts: J, who reported having seen defendant masturbating from outside his window and who is the complainant as to the home-invasion rape and related charges. The problem with relying on that information in the context of a demurrer is that none of it is apparent from the face of the indictment. Thus, as the Supreme Court has explained, it has no bearing on whether the factual allegations of the indictment sufficiently allege a basis for joinder under ORS 132.560(1). *Warren*, 364 Or at 113 (Whether an indictment's joinder allegations are sufficient to withstand a demurrer "must be resolved based on the face of the charging instrument"; a court "cannot consider facts other than those alleged in the charging instrument.").

In light of the foregoing, we conclude that the indictment in defendant's case did not allege sufficient facts to demonstrate compliance with the joinder statute. That is, neither the elements of the relevant offenses nor the allegations of the indictment suggest that defendant's public-indecency charges are of the "same or similar character" as his rape charge or any other of the first seven counts of the indictment.[9] Accordingly, Counts 8 through 11 should not have been joined with Counts 1 through 7, and the trial court therefore erred in disallowing defendant's demurrer.

We turn to whether the trial court's error was harmless. Under Article VII (Amended), section 3, of the Oregon Constitution, we must affirm a conviction if there is little likelihood that an error affected the verdict. Here,

---

[8] Given considerations such as venue and jurisdiction, the vast majority of indictments will include only offenses that are alleged to have been committed in the same county. Accordingly, we see little or no significance in the allegation that, in this case, defendant committed each of the charged offenses in Washington County.

[9] We have considered the remaining counts of the indictment in light of *Garrett* and, like the rape charge, none of those offenses provides a sufficient basis to demonstrate compliance with the joinder statute.

"whether improper joinder of charges affected the verdict depends [in part] on whether joinder led to the admission of evidence that would not have been admissible but for the joinder *** and, if so, whether that evidence affected the verdict on those charges." *Poston I*, 277 Or App at 145. Or, as the Supreme Court has articulated that test, the "disallowance of a demurrer based on improper joinder is harmful if the improper joinder resulted in the admission of unfairly prejudicial evidence." *Warren*, 364 Or at 132.

That harmlessness analysis requires us to examine the improperly joined charges as though they had been tried separately and to determine whether "[a]ll of the evidence that was presented at defendant's trial would have been admissible" at each separate trial. *Poston I*, 277 Or App at 146. In that context, evidence is "admissible" only when

> "(1) each item of evidence that was actually presented could have been admitted in the hypothetical trial under a legally correct evidentiary analysis and (2) it is implausible that, had the defendant objected under OEC 403 or raised some other objection invoking the trial court's discretion, the trial court would have excluded that evidence in the hypothetical trial."

*State v. Clardy*, 286 Or App 745, 772-73, 401 P3d 1188, *adh'd to as modified on recons*, 288 Or App 163, 406 P3d 219 (2017), *rev den*, 364 Or 680 (2019). Further, in addition to considering whether a defendant has been prejudiced by the factfinder's exposure to evidence that was not "admissible" in the sense of *Poston I*, we must also consider other potential causes of prejudice. Specifically, as the Supreme Court has explained,

> "improper joinder can prejudice a defendant in several ways, including if the defendant would testify regarding some charges but not others, if the defendant's defenses to the charges could be viewed as inconsistent, if the evidence of one charge might improperly influence the jury's verdict on other charges, or if the evidence could confuse the jury. Therefore, if the disallowance of a demurrer allows charges to be tried together improperly and the joint trial affects the defense in any of those ways, the disallowance may be prejudicial."

*Warren*, 364 Or at 132-33 (describing *Poston I*'s prejudice analysis as "incomplete") (citation omitted).

Starting with the prejudice analysis from *Poston I*, we first consider whether evidence related to defendant's home-invasion rape charge and other alleged person crimes would have been admissible in a separate trial on Counts 8 through 11, the public-indecency charges. As to those counts, we accept the state's concession that the trial court's error was not harmless. It is certainly plausible, given the availability of several percipient witnesses and the distinct character of the public-indecency charges, that a trial court would have excluded as unfairly prejudicial much or all of the graphic evidence regarding defendant's alleged person crimes. It is a closer question whether, in a separate trial on defendant's charges of rape, burglary, robbery, assault, strangulation, and unlawful use of a weapon, it is plausible that a trial court would have excluded evidence of defendant's alleged acts of public indecency under OEC 403 or on some other discretionary basis. In arguing that it is plausible, defendant points out that two witnesses, J's neighbor and a police officer, testified solely as to the public-indecency charges, and argues that their testimony tended to "paint the defendant as a bad guy or a pervert with a propensity to be sexually inappropriate." The state responds that it is "obvious" that evidence that J saw defendant masturbating would have been admissible to establish defendant's sexual interest in her and his motive for assaulting her.[10] Whether or not that is true, it misses the mark. Defendant points to potential prejudice resulting from the evidence that *other people* had witnessed his alleged acts of public indecency, and the state has offered no theory as to how that evidence would have been independently admissible in the rape-related trial and therefore was not prejudicial.

When we turn to the additional considerations identified by the Supreme Court in *Warren*, it becomes even more evident that the improper joinder in this case prejudiced

---

[10] We emphasize that, although that argument suggests an evidentiary overlap that may be relevant to our *Garrett* analysis, nothing about the allegations of the indictment provided a basis for understanding that any of the conduct underlying the public-indecency charges were witnessed by, or in any way related to, J.

defendant. We note that defendant only waived his right to a jury trial after the trial court denied his demurrer and motion to sever. "Defendant's decision to waive the jury or risk prejudice in the rape case from the admission of the sexual abuse evidence would not have been necessary had defendant been granted separate trials with separate juries. The imposition of that decision on defendant was itself prejudicial." *State v. Bray*, 55 Or App 694, 698, 639 P2d 702, *rev den*, 292 Or 825 (1982). When that circumstance is combined with the prejudicial effect of the testimony that was unrelated to the complainant, we cannot conclude that there was little likelihood that the court's error affected the outcome. Accordingly, we reverse and remand.

Reversed and remanded.