Argued and submitted September 29, 2021, affirmed October 5, petition for review denied December 29, 2022 (370 Or 694)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT RAY MARTIN,
*Defendant-Appellant.*

Washington County Circuit Court
C140113CR; A173823

519 P3d 132

Defendant appeals from a second sentencing judgment, obtained as post-conviction relief, arguing that the trial court erred in concluding that some of his offenses did not arise out of the same criminal episode. ORS 131.505(4) ("'Criminal episode' means continuous and uninterrupted conduct that *** is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective."). Defendant committed public indecency at five different drive-throughs on the same night by masturbating with his penis exposed. ORS 163.465(1)(c) (2013). *Held*: The trial court did not err in concluding that each offense was a separate criminal episode because the time, place, and circumstances of defendant's conduct support the trial court's conclusion that defendant achieved his objective separately at each drive-through.

Affirmed.

Eric Butterfield, Judge.

Ryan Scott argued the cause and filed the briefs for appellant.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Defendant appeals from a second sentencing judgment, obtained after receiving post-conviction relief, which reimposed his original sentence. He raises seven assignments of error, all but one of which stem from the trial court's conclusion that some of the offenses did not arise out of the same criminal episode.[1] Because each offense constituted a separate criminal episode, his sentence was lawful and the verdicts do not merge. We therefore affirm.

Defendant was convicted of eight counts of felony public indecency, ORS 163.465(1)(c) (2013), *amended by* Or Laws 2017, ch 318, § 10; Or Laws 2019, ch 65, § 1. ("A person commits the crime of public indecency if while in, or in view of, a public place the person * * * expos[es] the genitals of the person with the intent of arousing the sexual desire of the person or another person."). He committed five of the offenses at different locations on the same night, between approximately 6:00 p.m. and 1:00 a.m. In each offense, defendant pulled up to a drive-through service window where a woman was working and stared at her without speaking while masturbating with his penis exposed. In some of the instances, the employee did not realize what he was doing until he drew her attention downward with his eyes. There were no other cars in line when he approached each window, and he took steps to conceal his identity, such as removing the license plates from his car.

At the original trial, defendant did not argue that those incidents arose out of a single criminal episode, an argument that, if successful, would have reduced his sentence. *See* OAR 213-012-0020(2) (providing for the "200 percent" and "shift-to-I" rules). Defendant sought and obtained the post-conviction relief of resentencing on the basis that his trial counsel was ineffective for failing to make that argument.[2] On remand, the trial court held a hearing to

---

[1] We cannot reach assignment seven, which challenges the trial court's denial of early release and sentence reduction programming, because it is beyond the scope of remand from the post-conviction court. *State v. Curry*, 209 Or App 31, 36, 146 P3d 348 (2006) ("[T]he trial court is authorized only to correct the error that was identified by the post-conviction court.").

[2] The PCR court did not determine whether the offenses arose out of a single criminal episode, and neither party appealed.

consider the issue, concluded that each offense was a separate criminal episode, and reimposed the original sentence. On appeal, we must determine whether any of defendant's visits to five different restaurants' drive-through windows took place during a single criminal episode.

Whether conduct constitutes a single criminal episode "is a question of law that, in turn, may depend on predicate findings of historical fact." *State v. Potter*, 236 Or App 74, 82, 234 P3d 1073 (2010). We defer to the trial court's explicit and implicit findings of fact if there is evidence to support them and review its application of the law to those facts for legal error. *State v. Burns*, 259 Or App 410, 421, 314 P3d 288 (2013). "The state bears the burden of proving by a preponderance of evidence" that each offense was a separate criminal episode. *State v. Nesbit*, 274 Or App 694, 695, 361 P3d 649 (2015).

The term "criminal episode" is defined as "continuous and uninterrupted conduct that *** is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective." ORS 131.505(4). A criminal objective, in turn, "refers to the pursuit of some object or attainment of some goal beyond the successful commission of the acts constituting the offense charged." *State v. Cloutier*, 286 Or 579, 599 n 21, 596 P2d 1278 (1979).

That definition is grounded in the statutes addressing former jeopardy. *State v. Dulfu*, 363 Or 647, 668-69, 426 P3d 641 (2018) (concluding that the drafters of the sentencing regulations intended for "criminal episode" to have the same meaning as in the former jeopardy context). The principal requirement of those statutes is that "[n]o person shall be separately prosecuted for two or more offenses based upon the same criminal episode." ORS 131.515(2). Hence, the animating principle of the definition of "criminal episode" "is to identify the conduct (of a person) which may only be prosecuted once." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report § 26, 16 (Nov 1972).

Defendant argues that the five incidents arose out of a single criminal episode because all of his conduct was

directed toward the single criminal objective of "exposing himself for the purposes of sexual arousal." He further argues that, because indecent exposure does not depend on the existence of a "victim" who observes the exposure, and there is no evidence that he covered up or left public property between each incident, his conduct was essentially akin to streaking through downtown Portland for five hours. *See State v. Gialloreto*, 301 Or App 585, 595, 457 P3d 1105 (2019), *rev den*, 366 Or 827 (2020) ("[T]he offense of public indecency does not require a victim."). The state, on the other hand, contends that defendant achieved his criminal objective at each drive-through, then undertook it again at the next, such that, while his objective may have been the same, it was not a single one. We agree with the state.

"[O]ur analysis of whether conduct is directed to the accomplishment of a single criminal objective is 'an objective determination.'" *Welsh v. Taylor*, 284 Or App 387, 394, 392 P3d 366, *rev den*, 361 Or 886 (2017) (citing Commentary § 26 at 17). The inquiry is informed by "the degree to which the conduct is joined in time, place and circumstances." *State v. Taylor*, 293 Or App 460, 465, 428 P3d 939 (2018) (internal quotation marks omitted). "[T]he standard is not whether there is any difference in time and space at all, but whether there is enough of a difference in time, place, and circumstances surrounding the different acts to show that defendant's conduct was directed toward separate criminal objectives." *Burns*, 259 Or App at 430; *see also State v. Wilder*, 305 Or App 618, 627, 471 P3d 798 (2020), *rev den*, 367 Or 535 (2021) ("A critical factor in treating criminal conduct as a unitary event is *not* the coincidence of time, place, and circumstance, *but the resulting inference* that the conduct is directed to the accomplishment of a single criminal objective." (Emphases in original; internal quotation marks omitted.)).

The Commentary provides examples that reinforce the focus on the time, place, and circumstance of each offense. For instance, "[i]f a person burglarizes a number of homes during an evening, each burglary would be a separate criminal episode because there is a difference of time and place," but "a close question would develop if several apartments

in the same building were burglarized in succession in one evening." Commentary § 26 at 17. The difference between those two examples is that the apartment burglaries would be closer together in time and location than the house burglaries. In the drug context, "[t]he simultaneous possession and sale of narcotics would constitute a criminal episode" but "sales of narcotics by one defendant to different people at different times on the same day would constitute separate criminal episodes because of a difference in time." *Id*.

The time, place, and circumstances of defendant's conduct support the trial court's conclusion that defendant achieved his objective—as defendant puts it, "exposing himself for the purposes of sexual arousal"—separately at each drive-through. Each count in the indictment identified a different "public place" where defendant exposed himself, and the jury found that he exposed himself at each of those places. ORS 163.465(1) (2013) (providing that the person must be "in, or in view of, a public place" to be convicted of public indecency). Defendant committed each exposure at a different time, and those locations were miles apart—more like burglarizing different houses than apartments in the same building. Commentary § 26 at 17.

The circumstances of defendant's conduct also support the trial court's conclusion that each offense was a separate episode. Defendant was convicted of exposing his genitals "with the intent of arousing the sexual desire of the person *or another person*." ORS 163.465(1)(c) (2013) (emphasis added). The evidence that defendant sought to draw the attention of the women to what he was doing indicated that the women were not incidental witnesses, rather, their presence was an essential part of defendant's intent. The trial court could reasonably have determined that defendant, however misguidedly, took such elaborate measures to approach separate drive-through employees for the purpose of arousing those witnesses' sexual desire, in addition to his own. Additionally, the women had no discernible connection to each other, other than happening to have similar jobs, reinforcing the inference that the offenses were not joined in circumstances. *Cf. State v. Thornsberry*, 315 Or App 287, 296, 501 P3d 1 (2021) (observing that the offenses all took place in the same apartment and the victims were roommates). A

sufficient difference in the time, place, and circumstances of each exposure supported an inference that each incident was a separate episode.

Our decision in *Welsh* is instructive. 284 Or App 387. There, the petitioner sought post-conviction relief based on his trial counsel's failure to argue that multiple drug and firearm-related offenses were part of a single criminal episode, positing that they were aimed at achieving the single objective of "running a drug-dealing enterprise." *Id.* at 395. We rejected that argument, concluding that, although the petitioner may have "formed a distant or overriding goal to 'engage in a drug-dealing enterprise,' *** his delivery of each controlled substance and his possession of the firearms were in pursuit of more immediate and separate criminal objectives." *Id.* at 399. We further observed that "[t]o conclude otherwise would permit a defendant to convert any number of deliveries over a given period of time to a single criminal episode merely by forming an intent to 'engage in a drug-dealing enterprise' in advance," which "would not make sense." *Id.* (citation omitted); *see also Wilder*, 305 Or App at 631 ("Although defendant may have formed an overriding goal to facilitate a father-son hunting trip, the record supports the determination that his unlawful hunting and possession of the shotgun were in pursuit of more immediate and separate objectives[.] *** To conclude otherwise would allow a defendant to convert numerous wildlife violations or firearm offenses into a single criminal episode by merely forming a broad intent to foster family bonding through hunting.").

It would likewise not make sense to convert defendant's five targeted exposures into one criminal episode merely by framing his objective more broadly. Defendant carefully set up the circumstances of each exposure by choosing a time when no other cars were present, taking steps to hide his identity, approaching the window actively masturbating, and positioning himself such that the employee would have a clear view of his penis. Those facts indicate that each exposure was "in pursuit of [a] more immediate and separate objective[]" of exposing himself for sexual gratification and was thus a separate criminal episode. *Id.* The state therefore met its burden to prove that

he accomplished his objective at each drive-through, then undertook the same objective again at the next.

Defendant argues that our decision in *State v. Tooley* forecloses the conclusion that his conduct amounted to separate episodes. 265 Or App 30, 333 P3d 348, *rev den*, 356 Or 575 (2014). We disagree. *Tooley* arose in a different context and a different procedural posture. In that case, the state argued that the defendant's murders rose to the level of "aggravated" because they involved the murder of more than one victim "in the same criminal episode as defined in ORS 131.505." ORS 163.095(1)(d) (2014), *amended by* Or Laws 2015, ch 614, § 149; Or Laws 2019, ch 635, § 1. The defendant moved for a judgment of acquittal, arguing that no rational factfinder could conclude that his two murders arose out of the same criminal episode. *Tooley*, 265 Or App at 31. We disagreed, concluding that the record contained sufficient evidence that a rational factfinder could conclude that the murders arose out of the same criminal episode. *Id.* at 44-45. Both the posture of *Tooley*—a motion for judgment of acquittal—and its context—a determination of whether a defendant's crime subjects him to increased punishment rather than an evaluation of whether the principles of double jeopardy limit his sentencing exposure—render the case unhelpful in evaluating criminal history score and merger. *See e.g.*, *State v. Bryant*, 245 Or App 519, 522, 263 P3d 368 (2011) ("[T]he term 'criminal episode' appears in many different contexts, and its meaning can vary with the context in which it is used.").

And, in any event, *Tooley* does not aid defendant's argument. The defendant in that case murdered a husband and wife approximately 12 hours apart but in the same location, the victims' home. 265 Or App at 43. We concluded that a rational factfinder could determine that all of the defendant's conduct, including his activities between the two murders, was "in service of an ultimate and discrete criminal goal" to take over the victims' drug-dealing business. *Id.* at 40. To achieve that goal, the defendant needed to complete exactly two murders, so we concluded that a jury could infer that he had one concrete, overarching goal and each murder was a step toward achieving that goal.

In contrast, defendant's objective here—sexual gratification—is not a "discrete" goal, in that he did not need to expose himself a specific number of times to achieve it. It is more akin to the "distant and overriding" goals of running a drug-dealing enterprise and fostering father-son bonding through hunting. *Welsh*, 284 Or App at 399; *Wilder*, 305 Or App at 631. The trial court was therefore permitted to find that each offense constituted a separate criminal episode such that defendant's criminal history score was correctly calculated, and his convictions do not merge.

Affirmed.